[Civil No. 3981. Filed November 21, 1938.]

[84 Pac. (2d) 452.]

ROSALYN A. SEILER, as Executrix of the Estate of FRED SEILER, Deceased, Appellant, v. J. A. WHITING, Also Known as JAY WHITING, and A. C. WHITING, E. I. WHITING, E. J. WHITING and R. E. WHITING, Co-partners as WHITING BROTHERS, Appellees.

Mr. L. J. Cox, for Appellant.

Messrs. Struckmeyer & Flynn, for Appellees.

LOCKWOOD, J.—Rosalyn A. Seiler, as executrix of the estate of Fred Seiler, deceased, hereinafter called plaintiff, brought suit against A. C. Whiting, E. I. Whiting, E. J. Whiting and R. E. Whiting, co-partners as Whiting Brothers, and J. A. Whiting, also known as Jay Whiting, hereinafter called defendants, to recover damages for the death of her testator, which she claimed occurred through the negligence of J. A. Whiting. The case was tried before a jury which returned a verdict in favor of defendants, and after the usual motion for new trial was overruled, this appeal was taken.

There are twenty-six assignments of error, which are argued under ten propositions of law, as required by the rules. We think, however, it will be more satisfactory to discuss the assignments under four groups, the first going to the withdrawal by the court from the consideration of the jury of certain allegations of negligence by the defendants; the second covering the instructions given by the court to the jury; the third being the failure of the court to instruct on the law of contributory negligence; and the fourth

referring to the failure of the court to give instructions asked by the plaintiff.

Certain facts of the case are undisputed. J. A. Whiting was driving a motor truck belonging to Whiting Brothers from Ash Fork to Prescott, at about the hour of 1:10 A. M. August 2, 1936. While so doing, the truck came into collision with a Hudson coupe driven by deceased Seiler, who had with him a companion named Williams. As a result of the collision, the Hudson coupe was badly damaged, and Seiler and Williams were so seriously injured that they died shortly after the accident, without making any statement as to the circumstances surrounding it. This left J. A. Whiting as the only eye-witness of the accident and the circumstances immediately preceding it, his co-driver, Ralph Spillsbury, being asleep at the time of the collision in a sleeping compartment built just back of the driver's seat.

Plaintiff brought this action alleging that the accident was caused by the negligence of J. A. Whiting. This negligence, it was claimed, consisted of the following distinct and separate matters: 1. That the truck was being operated at a rate of speed unlawful for vehicles of that description; 2. That a part of the body of the truck exceeded a total outside width of eight feet; 3. That the truck was driven at the time of the collision to the left of the center of the road; 4. That the truck was loaded in a careless and unsafe manner with gasoline, which was thrown over Seiler and became ignited and burned him; 5. That the truck was driven at a greater speed than was reasonable and prudent, considering the condition of the highway at the point of collision; 6. That Whiting knew, when he first saw the Hudson coupe, that Seiler did not realize the relative position of it to the truck, and that if they continued in the same course there would be a collision,

but that he, Whiting, did know that fact and, notwithstanding, made no effort to prevent the collision; 7. That the truck was operated without having its headlights turned on until within a few feet of the automobile, and they were then suddenly flashed on so as to blind the driver of the coupe; 8. That the driver of the truck had not reached a safe age of maturity so as to be able to operate a truck in a careful and prudent manner; 9. That the driver of the truck had been on duty for a period of ten consecutive hours next immediately preceding the time of the collision, and was, therefore, not in a fit physical and mental condition to properly operate the truck; 10. That the truck was operated with glaring and dazzling headlights, and that the driver failed to dim the same before reaching the coupe; and 11. That the truck did not carry clearance lights on the left side which were visible under normal conditions, as required by section 1623, Revised Code 1928.

Defendants answered with a general denial, and a further allegation that the accident was directly caused by the negligence of the deceased in driving the Hudson coupe at a dangerous and unreasonable rate of speed, to-wit: 60 miles per hour, on the left-hand side of the road, and without keeping a proper lookout. They further set up contributory negligence consisting of the same matters as the sole negligence first alleged.

After plaintiff had put on her case, the defendants moved for an instructed verdict, which was denied. The defendants then offered evidence and renewed their motion at the close of the case, which was also denied. The court, however, in instructing the jury, told them:

"There are numerous acts of negligence alleged in this complaint, and the Court has found that is imma-

terial as there is no evidence to submit these to you with the exception of one particular act of negligence as alleged in paragraph seven.

"That the body of the Ford truck and semi-trailer had a width in certain parts in excess of eighty (80) inches in that there was a certain compartment or sleeping cab to the rear of the cab of the truck more than eighty inches in width and that the same did not carry a clearance light on the left side thereof displaying a white light visible under normal atmospheric conditions a distance of 500 feet to the front of the vehicle, and that the sleeping cab extended beyond the side of the truck and trailer in such a manner as to prevent the clearance light, if there were one there, from showing 500 feet to the front, or any distance at all, and also prevented the rear clearance light, if any were there, from being seen by a person approaching. As I stated, this is the act of negligence which the Court instructs you that the plaintiff must rely on at this time."

██ ██ This raises the question as to whether there was evidence sufficient to require the court to submit to the jury the other allegations of negligence above set forth as being in plaintiff's complaint. In considering this question, there are certain principles of law which we must apply to the evidence shown by the record, and we state them as follows: It is, of course, incumbent upon a plaintiff alleging negligence on the part of a defendant to show affirmatively by evidence sufficient to satisfy a reasonable man that the negligence complained of actually existed. It is not sufficient that the facts are such that it might have existed. It must appear affirmatively that it did. As we have stated, the only human being who could testify directly as to the facts immediately before and at the time of the collision was the driver of the truck, the defendant J. A. Whiting. The record shows clearly that if his evidence must be accepted by the jury as conclusive on the points concern-

ing which he testified, each and every one of the allegations of negligence were affirmatively disproved. Plaintiff recognizes this is true, and urges that the jury is not required to believe the evidence of an obviously interested party, but may discredit it, and accept rather inferences to be drawn from the physical facts which are shown to have surrounded the accident, and from various presumptions of law and fact. If the physical facts as testified to are of such a nature that it is more reasonable to infer negligence on the part of the defendant Whiting than to the contrary, it is, of course, true that the jury may accept such inference rather than the testimony of an interested witness. *New York Life Ins. Co.* v. *McNeely, ante,* p. 181, 79 Pac. (2d) 948. But if these facts are of such a nature that an inference of due care is just as reasonable as one of negligence, the jury may not base a verdict on a guess or surmise that negligence existed.

██ ██ We consider next the question of presumptions. There has been much erroneous thinking and more loose language in regard to presumptions. We read of presumptions of law and presumptions of fact, of conclusive presumptions and of disputable presumptions. In truth there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, *in the absence of any evidence to the contrary,* a jury is compelled to reach a certain conclusion of fact. But a presumption so declared by the law is only raised by the absence of any real evidence as to the existence of the ultimate fact in question. It is not in and of itself evidence, but merely an arbitrary rule imposed by the law, to be applied in the absence of evidence, and whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to

follow the usual rules of evidence in reaching their ultimate conclusion of fact. As was once said, "Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." *Mackowik* v. *Kansas City etc. R. Co.*, 196 Mo. 550, 94 S. W. 256, 262. The Supreme Court of South Dakota, in *Peters* v. *Lohr*, 24 S. D. 605, 124 N. W. 853, in discussing this question, used the following language (p. 855):

" . . . A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced *prima facie* evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's *prima facie* evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion. Elliott, Ev. §§ 91, 92, 93; Wigmore, Ev. §§ 2490, 2491. . . . Therefore we have the *prima facie* evidence of the truth of a fact opposed only by a presumption, which in itself is not evidence, and which should not be placed in the scale and weighed against the *prima facie evidence*. *Prima facie* evidence means sufficient evidence upon which a party would be entitled to recover, providing his opponent produced no further testimony. Wigmore, Ev. 2494. . . . "

It is unnecessary that we set forth the evidence produced in the case in regard to any of the allegations of the complaint regarding negligence, except the one which the court submitted to the jury, as it would merely unduly lengthen this opinion, and be of no value as a precedent in other cases. It is sufficient to say that there is nothing in the record

upon which a jury could base a conclusion that defendant Whiting was guilty of any of the acts of negligence withdrawn from the consideration of the jury except, perhaps, certain presumptions as to due care on the part of the plaintiff. When the definite and positive testimony of Whiting is placed on the scale, as we have said, any presumptions disappeared, and the burden then shifted to plaintiff to produce some affirmative evidence of negligence which could be weighed by the jury as against the testimony of Whiting, and this, for obvious reasons, she failed to do. We are satisfied that the trial court properly withdrew from the consideration of the jury all the issues of negligence, excepting the one above referred to. On that point the evidence was in conflict, and that conflict was resolved by the jury in favor of the defendants. This, of course, is binding upon us.

■ We consider next the instructions given by the court which it is alleged were erroneous. The only one pointed out by the plaintiff is the following one:

"Where an injury or damage is caused by the combined negligence of two persons, the law does not permit either to recover compensation therefor from the other. Hence, if you find from the preponderance of the evidence that the injuries to the plaintiff's intestate and the damages resulting therefrom would not have occurred but for the combined negligence of the plaintiff's intestate on one part and the defendants on the other part concurring, then your verdict should be for the defendants."

The language of this instruction is, perhaps, not that generally used by courts in explaining the meaning and effect of contributory negligence, but we think it correctly states the law, for when the negligence of plaintiff and defendant combined causes an accident, the plaintiff may not recover, even though

the defendant were also negligent. The jury could not possibly have been misled as to the law applying under such circumstances, even though the technical phrase "contributory negligence" was not mentioned.

 The third question is as to the failure of the court to instruct more specifically on the law of contributory negligence. It would, perhaps, have been better for it to do so, but since contributory negligence is a matter of defense, we think plaintiff is not in a position to object to the failure of the court to define it, unless such failure resulted in misleading the jury to his detriment. We cannot see how the failure to define the elements of contributory negligence could have had this effect.

 The last question is as to the failure of the court to give certain instructions requested by the plaintiff. So far as these requested instructions referred to negligence of which there was no evidence, and which the court properly withdrew from the consideration of the jury, it was not error to fail to instruct on such matters. The only issue of negligence which was submitted was the alleged failure to carry proper clearance lights. The court instructed fully upon this issue, and there is no complaint made by plaintiff as to the correctness of the instructions.

Upon an examination of the whole record, we are satisfied that the court submitted to the jury all the allegations of negligence upon which there was any evidence which would have sustained a verdict in favor of plaintiff; that the instructions applicable to the case as submitted were correct, and could not have misled the jury as to the rules of law which they should apply to their consideration of the evidence, and that all of the instructions requested by plaintiff, which the court refused to give, were either incorrect state-

ments of the law or else were not applicable to the issues raised by the evidence.

The judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.