**Danny Wayne MILLER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV 87–1076 PHX RCB.**

United States District Court,
D. Arizona.

Oct. 19, 1988.

On Grant of Motion For Summary
Judgement June 19, 1989.

Raymond P. Lee, Hofmann, Salcito, Stevens & Myers, P.A., Phoenix, Ariz., for plaintiff.

Stephen M. McNamee, and Richard G. Patrick, Office of the U.S. Atty., Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

BROOMFIELD, District Judge.

Defendant United States of America seeks summary judgment against plaintiff Miller on the ground that the court lacks subject matter jurisdiction to entertain this action. After a careful review of the various papers filed by the parties—including an amicus curiae brief filed by the Attorney General of the State of Arizona—and after conducting oral argument on the matter, the court now rules.

### FACTS

This is an action for personal injuries, pain and suffering, impaired earning capacity and property damages. Plaintiff Miller was injured on November 3, 1984, when the motorcycle he was operating crashed into an embankment because the road he was on suddenly disappeared. Pre–Trial Order ("PTO") § 1. The road, Old Highway 279, had at one time crossed a wash on top of a metal culvert. Unknown to plaintiff, the culvert had been removed and no warning signs were posted. *Id.* The sole defendant named in plaintiff's complaint (now superseded by the pre-trial order) is the United States of America. Plaintiff's complaint alleges that defendant, through its agents and employees, is responsible in tort for plaintiff's injuries allegedly caused by defendants "careless, reckless and negligent conduct in the design, construction, operation, maintenance and safety of the roadway." Plaintiff's Complaint ¶ 4.

Old Highway 279 is located within the Prescott National Forest, which is under the jurisdiction of the United States Department of Agriculture. PTO § 3, ¶ 2. In fact, back in September of 1964, the State of Arizona abandoned its roadway interests in Old Highway 279. Defendant's SOF ¶ 7. Further, in June of 1985, after plaintiff's accident, Yavapai County also abandoned its interest in Old Highway 279 to the Forest Service and the Department of Agriculture. Defendant's SOF ¶ 8. At the time of the accident, however, the United States, through the Department of Agriculture and the Forest Service, was the owner of the land under and surrounding the road easement to Yavapai County. Defendant's Reply, Supplemental Declaration of Donald E. Olson, ¶ 1. The area where the accident occurred was patrolled by agents and employees of the United States Forest Service, which exercised possession, dominion, control, observation and inspection of the National Forest Service sign reading "please close the gate". This sign was posted on the gate at the point of ingress to the National Forest leading to the road where plaintiff's accident occurred. PTO § 3, ¶ 7.

Plaintiff Miller, along with various members of his family, went to the Prescott National Forest for the purpose of operating off-road motor vehicles for recreational purposes. PTO § 4, ¶ 1; Defendant's SOF ¶ 1. They entered the Prescott National Forest by turning off the present State Highway 279 and driving onto the National Forest Lands through the unlocked gate. Defendant's SOF ¶ 4. Finally, it is undisputed that plaintiff and his family did not pay any admission fee to enter the Prescott National Forest. Defendant's SOF ¶ 5.

### ANALYSIS

Before the court decides the merits of the present motion, it notes that it was not until after the parties' joint-filing of the pre-trial order that defendant sought leave to file the instant motion. Leave was granted not because the motion was timely—it clearly was not under the court's previous orders—but precisely because it raised the issue of the court's subject matter jurisdiction to decide this dispute. If any doubt exists as to the validity of the court's subject matter jurisdiction, the court must resolve the dispute either *sua sponte* or upon motion of the parties. In other words, timely or not, defendant cannot waive objections as to the court's sub-

ject matter jurisdiction. Therefore, the court will consider plaintiff's supplemental statement of facts, and deny defendant's motion to strike. The court will also consider as well the supplemental affidavit of Donald E. Olson, filed by defendant. Additionally, the court will grant plaintiff's motion to amend the parties' pre-trial order.

Defendant contends that the court lacks subject matter jurisdiction over this dispute because defendant has not waived its sovereign immunity under the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b), 2671. Defendant points out that since the federal statute is merely a procedural device allowing plaintiff to bring suit against defendant, plaintiff must first state a cause of action against defendant which exists under Arizona law. It is uncontested by the parties that in order to recover against defendant based upon an action sounding in tort, plaintiff must establish the four traditional elements to a negligence cause of action: (1) a legal duty on the part of defendant to conform to a standard of conduct established by Arizona law for the protection of plaintiff; (2) breach of that duty; (3) legal or proximate cause; and (4) legally compensable harm. *See Garcia v. United States,* 826 F.2d 806, 809 (9th Cir. 1987). Defendant argues in the present motion that it owed no duty to plaintiff under Arizona law, and therefore defendant has not waived its immunity under the Federal Torts Claim Act.

Thus, the court must grant defendant's motion for summary judgment unless plaintiff can demonstrate that a genuine issue of material fact exists as to the alleged duty of care defendant owed to plaintiff. Defendant's argument centers around Arizona's Recreational User Statute, A.R.S. § 33–1551. Defendant contends that the statute makes it clear that defendant owed no duty to plaintiff at the time of the accident, since "[a]n owner, lessee or occupant of premises does not ... [o]we any duty to a recreational user to keep the premises safe for such use." A.R.S. § 33–1551.A.1. (West Supp.1987). The term premises includes "forest lands, and any other similar lands which by agreement are made available to a recreational

user." A.R.S. § 33–1551.B.1. (West Supp. 1987). Recreational user is defined as a "person to whom permission has been granted or implied without the payment of an admission fee or other consideration to enter upon premises to hunt, fish, trap, camp, hike, ride, swim, or engage in similar recreational pursuits." A.R.S. § 33–1551.B.2. (West Supp.1987).

Thus, applying the above statute to the factual record before the court, defendant contends that no genuine issue of material fact exists as to the following conclusions of law: (1) defendant was the owner of the land underlying Old Highway 279 at the time of the accident; (2) plaintiff was a recreational user of the land in question who paid no admission fee; and (3) pursuant to Arizona statute, defendant therefore owed no duty of care to plaintiff. The court concurs with defendant's position that the above three conclusions offer no legitimate issue for the trier of fact.

However, the court's analysis does not end here as plaintiff offers two reasons why summary judgment in defendant's favor is nonetheless not appropriate. Plaintiff contends that: (1) the Recreational User Act violates the Arizona constitution and is therefore inapplicable; and (2) even if the constitutionality of the state statute is upheld, defendant's alleged failure to repair or warn of the dangerous condition is "wilful or malicious" and thus an exception to the Recreational User Statute. *See* A.R.S. 33–1551.C. (West Supp.1987). The court will address separately these two remaining issues.

### (a) Constitutionality of the Recreational User Act:

Upon receiving plaintiff's response to the underlying motion, in which plaintiff raised the issue of the constitutionality of the Arizona statute, the court certified this issue to the Arizona Attorney General's office. The state subsequently filed an *amicus curiae* brief on this issue, as well as a reply memorandum following plaintiff's response to the amicus brief. The court notes there is a strong presumption supporting the constitutionality of a legislative

enactment and the party asserting its unconstitutionality bears the burden of overcoming the presumption. *See Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977). Specifically, plaintiff must show that the statute violates Article 18, Section 6 of the Arizona constitution, which provides that "[t]he right to recover damages for injuries shall never be abrogated," and Article 2, Section 31, which provides that "[n]o law shall be enacted in this State limiting the amount of damages to be recovered for causing the death and injury of any person." In this regard, plaintiff contends that the Recreational User Act "abrogates" the common law causes of action for failure to maintain the land in a reasonably safe condition and failure to guard or warn of an unsafe condition.

■ The Attorney General contends that plaintiff must show that his present cause of action was in existence at the time of the enactment of the above constitutional protections. The court concurs with this position. The Arizona Supreme Court held in *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986), that article 18, section 6 protects actions for negligence recognized at common law at the time of the article's adoption. Furthermore, the Supreme Court held recently that the tort of strict liability is not similarly protected because this substantive cause of action did not exist at the time the constitutional provision was adopted. *See Bryant v. Continental Conveyor Equipment Co.*, 156 Ariz. 193, 195, 751 P.2d 509, 511 (1988). The court is bound by the recent holding in *Bryant*, in which the Arizona Supreme Court explicitly required the party to demonstrate that the cause of action which was the basis of the lawsuit existed as of 1912.

■ Plaintiff has failed to meet this burden. First, plaintiff completely ignores the explicit holding of the *Bryant* court and instead attempts to reject the *Bryant* decision by citation to the case of *Humana Hospital Desert Valley v. Superior Court*, 154 Ariz. 396, 742 P.2d 1382 (Ariz.App. 1987). Obviously, this case can offer little support for plaintiff's position as it is the holding of a lower appellate court decided before the *Bryant* holding. Plaintiff has simply made no showing that he has satisfied the *Bryant* requirement, and the court is left with no recourse but to uphold the constitutionality of the Arizona Recreational User statute. Furthermore, the court notes that plaintiff's alternative position— that the facts of this case fit within the "wilful or malicious" exception of the statute—further bolsters the court's conclusion that the statute is constitutional. By attempting to avail himself of the exceptions to the statute, plaintiff's arguments also illustrate that the statute merely limits, but does not abrogate, plaintiff's rights to recover the relief he seeks in the instant lawsuit. The court therefore concludes that plaintiff has failed to demonstrate that the Arizona Recreational User Act violates the Arizona constitution.

### (b) "Wilful or Malicious" Exception to the Recreational User Act:

Construing all available evidence in favor of the non-moving party, the court must next determine whether plaintiff fits within an exception to the Recreational User Act, or at least whether a material question of fact exists as to this issue. The precise language of the exception provides that the Arizona Recreational User Act "does not limit the liability which otherwise exists for ... wilful or malicious failure to guard or warn against a dangerous condition, use or activity." A.R.S. 33–1551.C. (West Supp. 1987).

Because the court grants plaintiff's motion to amend the parties' pre-trial order, and denies defendant's motion to strike plaintiff's supplemental statement of facts, it is no longer an issue whether plaintiff has *plead* such an action or whether he has put forth *any* evidence to support such a claim. Thus, the remaining question for the court is whether plaintiff raises a genuine issue of material fact as to the alleged wilful or malicious action of defendant. Plaintiff claims that "there is sufficient evidence that the defendant's failure to guard or warn of the excavation in the highway was willful and malicious, especially in light of the fact that the defendant

affirmatively created the condition from which the need to guard or warn arose." Plaintiff's Response, 18.

Nonetheless, defendant still maintains that these latest pleadings and filings are insufficient to state a claim against defendant for wilful or malicious conduct. Specifically, defendant points to the deposition testimony cited by plaintiff to support plaintiff's statement of fact that defendant's agents "were aware that the metal culvert had been removed years before the accident to Danny Miller occurred." Plaintiff's Supplemental Statement of Facts ¶ 16. Defendant argues that the only evidence plaintiff puts forth to support this claim is: (1) the deposition testimony of plaintiff's parents, which is inadmissible as hearsay; (2) the deposition testimony of Yavapai County employee Joseph B. Sarvis, which is inadmissible hearsay; and (3) the deposition testimony of defendant's employees Robert Deadmond and Thomas Bonomo, which simply does not support plaintiff's contentions.

Specifically, the court notes that the statements of plaintiff's parents are merely that some unknown, unidentified employees or agents of defendant knew about the missing culvert prior to the time of the accident. Similarly, the Sarvis statement is to the effect that "someone from the Forest Service" told him that the Forest Service had removed the culvert prior to the accident. Furthermore, the statement by Deadmond simply answers in the affirmative to the following hypothetical question posed to him by plaintiff's counsel: "[I]f people were aware that a culvert was removed, and there was a ditch there where a culvert and road had been ... would you now agree ... that that is a danger?" The court also notes that Bonomo stated that another employee of defendant, Carter Rogers, knew when Yavapai County removed the culvert. And when asked "when did Mr. Rogers indicate to you that the culvert had been removed," Bonomo responded that "[i]t was probably some five years prior to the date of that accident, maybe ten years, for all I know." Bonomo does not state, however, whether he or

Rogers acquired this information before or after the accident. Thus, it is unclear to the court whether any employee of defendant knew, prior to the accident, that the culvert had been removed.

Finally, defendant argues that even if the court were to ignore the above deficiencies in plaintiff's evidence, and assume for the purposes of the pending motion that all these statements were true, the court still could not allow plaintiff to utilize the wilful or malicious exception to the Recreational User Act. Defendant contends that the "facts" as alleged cannot as a matter of law rise to the level of wilful or malicious conduct. With this latter proposition, the court disagrees.

■ The court finds defendant's citation to the Arizona Supreme Court's decision in *Linthicum v. Nationwide Life Insurance Co.*, 150 Ariz. 326, 723 P.2d 675 (1986), unpersuasive. The court in *Linthicum* was asked to wade through the jumble of terms used by parties seeking punitive damages—"malicious, wilful, wanton, outrageous" etc.—and come up with a standard to apply punitive damages in insurance bad faith claims. That the Arizona Supreme Court did so by adopting an "evil mind" methodology does not somehow transform the language of the state statute in question which specifically references wilful or malicious conduct. Rather, the court concludes from a reading of the other case law cited by the parties that whether a parties' (1) affirmative action in creating a dangerous condition and/or (2) knowledge of the danger and failure to warn rises to the level of wilful or malicious conduct is a question for the trier of fact.

However, the court must consider not only plaintiff's allegations, but, more importantly, plaintiff's proffer of evidence to support these claims. As the earlier analysis indicated, thus far plaintiff has offered either inadmissible hearsay evidence or ambiguous statements to support his claim. As such, plaintiff has thus far failed to meet his burden of establishing a genuine issue of material fact which awaits disposition by the trier of fact. The party opposing a motion for summary judgment cannot

rest upon mere allegations or pleadings, but must set forth specific facts showing there is a genuine issue for the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Obviously, inadmissible hearsay evidence may not be considered by the court in determining whether a genuine issue of material fact exists which precludes summary judgment. *See, e.g., Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 667 (9th Cir.1980).

■ However, the court declines to grant defendant's motion for summary judgment without first allowing plaintiff an opportunity to file with the court admissible evidence which would support his allegations of wilful and malicious conduct on the part of the government. The court reaches this somewhat unusual conclusion because of the unusual timing of the motion and the belated raising of the wilful or malicious issue. Although plaintiff did not seek leave to file a Civil Rule 56(f) affidavit, the court notes that defendant's motion was filed after discovery had closed. Fairness dictates and the court will allow plaintiff forty-five days (45) within which to seek to file admissible evidence he contends supports a claim of wilful or malicious conduct on the part of defendant. During this period, the court will also vacate the discovery cut-off deadline, and will re-open discovery for this limited purpose only. The parties may thereafter file memoranda responding and replying to the remaining issue in a timely manner as provided by the Local Rules, and the court will then make a final decision on the matter.

IT IS ORDERED granting plaintiff's motion to file an amended pre-trial order.

IT IS FURTHER ORDERED denying defendant's motion to strike plaintiff's supplemental statement of facts.

IT IS FURTHER ORDERED granting plaintiff forty-five days (45) within which to file admissible evidence he contends supports a claim of wilful or malicious conduct on the part of defendant.

IT IS FURTHER ORDERED vacating the discovery cut-off deadline and re-opening the parties' discovery for this limited purpose only.

IT IS FURTHER ORDERED allowing the parties to file their respective response and reply memoranda thereafter in a timely manner as provided by the Local Rules.

IT IS FURTHER ORDERED staying a ruling on defendant's motion for summary judgment until after the above filing and briefing schedule has been carried out by the parties.

IT IS FINALLY ORDERED continuing the trial date currently set for October 20, 1988, until such time after the above filing and briefing schedule as the court deems appropriate.

## ON GRANT OF MOTION FOR SUMMARY JUDGMENT

On October 16, 1988, the court issued an order staying final ruling on defendant's motion for summary judgment. At that time, the court declined to grant defendant's motion for summary judgment in its entirety without first allowing plaintiff an opportunity to file with the court admissible evidence which would support his allegations of willful or malicious conduct on the part of the government. Since the filing of that order, the court has received the parties' supplemental papers and discovery materials, and conducted additional oral argument on the matter. After careful consideration of the parties' positions, the court grants defendants' motion for summary judgment and dismisses plaintiff's complaint and action.

### FACTS

In the interests of brevity, the court begins its analysis by incorporating into the present order the entirety of the October 16, 1988 order. The court refers the parties to that order's statement of contested and uncontested facts. Since the filing of that order, plaintiff filed a supplemental statement of facts on the remaining issue in this litigation. This supplemental filing states in full:

Agents of the Defendant knew that culverts had been removed from Old 279, and had actual knowledge that a culvert

had been removed from the precise location of this accident at least ten years earlier creating a hazardous condition at the site of Danny Miller's accident. Agent Rogers, who was aware of the missing culverts, advised his superiors and co-workers of this danger. Yet despite that knowledge, no remedial action was undertaken until after Danny Miller's accident.

Plaintiff's Supplemental Statement of Facts, ¶ 16 (citations to depositions omitted). Defendant did not file an opposing statement of uncontested facts.

### SUMMARY JUDGMENT STANDARD

To grant summary judgment, the court must hold that the record clearly establishes "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Matsushita Electric Industrial Co., v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a motion for summary judgment cannot rest upon mere allegation or denials of the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986).

Under recently enunciated standards as set forth by the Supreme Court, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2514. A material fact is any factual issue which might affect the outcome of the case under the governing substantive law. A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510.

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment. *Id.* at 249–50, 106 S.Ct. at 2511. As the Supreme Court emphasized in *Anderson:*

> [T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2513.

### ANALYSIS

For the purposes of the pending motion, defendant accepts plaintiff's factual assertions as true. Therefore, the court is presented with the remaining issue in this litigation of whether a reasonable juror could find willful or malicious conduct from the following facts: (1) defendant's employees knew that the old roadway was used by off-road vehicles; (2) defendant's employees also knew that the culvert was no longer in place; (3) defendant's employees also knew, or should have known, that the removed culvert presented a hazard to the

users of the road; and (4) that defendant's employees failed to take any remedial action to warn such potential users of the hazard.[1]

■ *(a) Alleged Willful Conduct:* Plaintiff directs the court's attention to the Arizona Supreme Court's holding that "[w]illful misconduct means intentional, wrongful conduct, done either with knowledge that serious injury to another probably will result or with a wanton and reckless disregard of the possible results and is essentially a question of fact." *Southern Pacific Transportation Co. v. Lueck,* 111 Ariz. 560, 562–63, 535 P.2d 599, 602 (1975) (citing *Olea v. Southern Pacific Transportation Co.,* 272 Cal.App.2d 261, 77 Cal.Rptr. 332 (1969)). Defendant argues that the Arizona Supreme Court had previously delineated between the terms "willful" and "wanton" in the case of *Lutfy v. Lockhart:* "Negligence ordinarily is the result of carelessness, willfulness implies an intent or purpose to do a thing, while wantonness implies an indifference as to the result of an act." 37 Ariz. 488, 295 P. 975, 978 (1931).

However, defendant does not explain how a later decision by the Arizona Supreme Court (*Lueck*) cannot refine an earlier holding by that same body (*Lutfy*). Thus, it is clear to the court that the standard for evaluating willful conduct as set forth in the *Lueck* decision is the present state of the law as defined by the state courts in Arizona. However, since plaintiff offers no evidence of intentional conduct on the part of defendant's employees, the remaining question for the court is whether a reasonable juror could find wanton or reckless—and thus willful—conduct from defendant's employees' failure to act. The court concludes that a reasonable juror could not reach such a conclusion. Assuming that willful action connotes a form of intentional or wanton conduct, the court cannot conclude that failure to repair and regrade roads after the removal of a cul-

vert rises to the level of willful conduct within the meaning of the Arizona Recreational User Act.

■ *(b) Alleged Malicious Conduct:* The court obviously finds no merit to plaintiff's position that this second prong of the exception applies to the facts of the instant case. Plaintiff offers no common law definition of malicious conduct which would in any way apply to remaining issue in this litigation. Even assuming prior knowledge of the removed culvert on the part of defendant's employees, the court concludes that no reasonable juror could find any evidence or inferences of malice from defendant's employees' actions. Under the facts of this case, defendant's actions cannot be termed malicious by any standard use of the term, which in any event must describe conduct even more egregious than willful.

Because the court concludes that no reasonable juror could find willful or malicious conduct from the state of the evidentiary record presented by plaintiff, and consistent with the court's October 16, 1988 order, the court concludes that plaintiff's action is barred by the Arizona Recreational User Act. The court therefore grants defendant's motion for summary judgment for lack of subject matter jurisdiction.

IT IS ORDERED granting defendant's motion for summary judgment.

IT IS FURTHER ORDERED dismissing plaintiff's complaint and action.

---

1. The court notes that plaintiff apparently no longer contends that defendant's agents affirmatively created the hazard by removing the culvert. While this was raised by plaintiff in his original response to defendant's motion, this issue is not addressed by the supplemental statement of facts filed with the court.